*294 OPINION.
Tiiammell
: We will first dispose of the question of the gain or loss on the sale of taxpayer’s good will. In determining the deficiency from which the taxpayer appeals, the Commissioner held the good will to have had a March 1, 1913, value of $40,000, and on that basis determined that a taxable profit of $60,000 had been realized on the sale in 1919.
The valuation of the good will set forth in the findings of fact was shown by the testimony of several bankers of many years’ experience in the larger banks of the Northwest, who were familiar with the methods of valuing good will of banks in the territory in *295 which the taxpayer was located. These men testified to a value of good will of the taxpayer in excess of $100,000. From all the testimony, we are of the opinion that the good will of the taxpayer had a value of $100,000, or more, on March 1, 1918. No taxable gain, therefore, was realized on the sale thereof for $100,000. Under the decision of the Supreme Court in United States v. Flannery, 268 U. S. 98, no deductible loss was sustained.
With respect to the furniture and fixtures, the taxpayer contends that the Commissioner used too high a rate of depreciation and failed to restore to the furniture and fixtures account certain items which had been charged oil, which resulted in the finding of the Commissioner of a profit of $9,073.07, whereas it is contended that there was a loss of $34,762.49.
It appears that during 1907 and 1908 taxpayer enlarged its banking quarters, installed the usual banking fixtures, consisting of counters, desks, partitions, wainscoting, cages, etc., the counters and wainscoting being of marble, the counter tops, desks, and movable furniture being mahogany, and the cages of bronze grille work. At the same time there were slight alterations and renovation of the banking room and the installation of a coin vault of reinforced concrete and steel construction. The total cost of these alterations, fixtures, furniture, and repairs was $60,690.88. Of this amount $40,000 was charged directly to profit and loss for 1907, and $20,690.88 was charged in 1908 against the income of the building, being in effect a write-off of this amount against the profits of 1908.
In the audit upon which the determination of the deficiency is based, approximately $30,000 of this amount is restored to taxpayer’s books as of 1907 and 1908 as “ equipment,” and depreciated from that date at the rate of 10 per cent per annum, thus totally eliminating such items prior to the sale in 1919. The remaining $30,000 has not been restored. A portion of this cost is properly chargeable to building account and another portion to banking fixtures and furniture which passed under the sale in 1919. The precise amount chargeable to each account can not be determined at this time, but from the testimony of the witnesses and the photographs of the banking quarters, taken shortly after the changes were completed, we are convinced that 10 per cent annual depreciation on these assets was too high, that 4 per cent is adequate, and that the cost to the taxpayer of a substantial portion of the assets sold was omitted in computing the profit from the sale. While it is impossible from the evidence to determine what loss was sustained on the sale of the banking equipment, furniture, and fixtures, there is ample testimony that no profit was realized on such sale. Accordingly, the determination that a profit of $9,073.07 was realized was erroneous.